# Exhibit A

DAVID MAXFIELD, ATTORNEY, LLC
Dave Maxfield
P.O. Box 11865
Columbia SC 29211-1865



**CERTIFIED MAIL®**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7020 1290 0000 5008 0664

$14.890
US POSTAGE
FIRST-CLASS
FROM 29206
OCT 13 2022
stamps
endicia

CT CORPORATION SYSTEM
2 OFFICE PARK CT STE 103
COLUMBIA SC 29223-5948



Dave Maxfield, Attorney, LLC
Phone: 803.509.6800
Toll Free Fax: 855.299.1656
Web: consumerlawsc.com

Mailing Address:          Physical Address:
P.O. Box 11865        SOCO 80808 Building
Columbia, SC 29211        808 D Lady Street
Columbia, SC 29201

*Member, National Association of Consumer Advocates*
*Member, Public Investors Arbitration Bar Association*

October 12, 2022

VIA CERTIFIED MAIL
Bank of America, NA
c/o CT Corporation System
2 Office Park Court Ste. 103
Columbia, South Carolina 29223

Westcliff Technologies, Inc., d/b/a National Bitcoin ATM
c/o CSC-Lawyers Incorporating Service
2710 Gateway Oaks Dr Ste. 150N
Sacramento, CA 95833

Cash Cloud, Inc., d/b/a Coin Cloud
c/o Smith & Shapiro, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074

Re:     Christine Borden vs. Bank of America, NA ("BANA") and Westcliff
        Technologies, Inc., d/b/a National Bitcoin ATM, and Cash Cloud, Inc., d/b/a
        Coin Cloud

Case No. 2022-CP-22-0868

Dear Sir or Madam:

Enclosed herewith and served upon you please find the Summons and Complaint in
the above matter.

Sincerely,

Janel Streater
Paralegal to Dave Maxfield

Enc.

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF GEORGETOWN | FIFTEENTH JUDICIAL CIRCUIT |
| Christine Borden, | Case No. 2022 - CP - 22 - 0868 |
| Plaintiff, | |
| vs. | **SUMMONS** |
| Bank of America, NA ("BANA") and Westcliff Technologies, Inc., d/b/a National Bitcoin ATM, and Cash Cloud, Inc., d/b/a Coin Cloud, | |
| Defendants. | |

TO:     THE DEFENDANTS ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is hereby served upon you and to serve a copy of your Answer to the said Complaint on the subscriber, David A. Maxfield, Esquire, at his office at P.O. Box 11865, Columbia, South Carolina 29211, within thirty (30) days after service hereof, exclusive of the date of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the court for the relief demanded in the Complaint. If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded in the Complaint.

DAVE MAXFIELD, ATTORNEY, LLC

_s/ Dave Maxfield_
Dave Maxfield, Esq., SC Bar No. 7163
P.O. Box 11865
Columbia, SC 29211
(803) 509-6800
(855) 299-1656 (fax)
dave@consumerlawsc.com

DATED: October 11, 2022
Columbia, South Carolina

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

STATE OF SOUTH CAROLINA

COUNTY OF GEORGETOWN

IN THE COURT OF COMMON PLEAS

FIFTEENTH JUDICIAL CIRCUIT

Christine Borden,

Plaintiff(s),

-vs-

Bank of America, NA ("BANA") and
Westcliff Technologies, Inc., d/b/a National
Bitcoin ATM, and Cash Cloud, Inc., d/b/a
Coin Cloud,

Defendant(s).

**COMPLAINT**

(Jury Trial Requested)

Plaintiff, complaining of the Defendants above named, would respectfully show:

## JURISDICTION

1.  The State of Residence of Plaintiff is South Carolina, County of Georgetown.

2.  Bank of America, NA ("BANA") is a National Association with its principal place of business and nerve center in the State of North Carolina.

3.  Westcliff Technologies, Inc., ("Westcliff") is a corporation with its headquarters and nerve center in the state of California.

4.  Cash Cloud, Inc., ("Cash Cloud") is a corporation with its headquarters and nerve center in the state of Nevada.

5.  This Court has jurisdiction over the parties and subject matter of this action and venue is proper.

1

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

## INTRODUCTION

6.  Plaintiff is a 73-year-old grandmother, who lived alone on her monthly social security check of less than $1,250.00.

7.  Plaintiff also depended on her life savings of approximately $100,000, approximately $33,000 of which was held in a BANA savings account with the remaining $71,000 Edward Jones retirement account.

8.  If these funds were kept safe, Plaintiff could continue to live independently and above the poverty line, albeit modestly.  But as Defendants know, senior citizens like Plaintiff and their savings and retirement accounts are vulnerable to, and are being specifically targeted by, criminals.

9.  Defendant BANA, one of the largest banks in the world, has known for years that its senior customers – particularly elderly, single women, are highly vulnerable to financial exploitation. See, https://www.bankofamerica.com/content/documents/security/senior_financial_exploitation.pdf

10. Knowing this danger, Defendant BANA has an obligation to prevent the financial exploitation of those senior customers.

11. Defendants Westcliff and Cash Cloud own and operate a national network of Bitcoin Automated Teller Machines (BTM's) including in Georgetown County, South Carolina.

12. Said Defendants also know that their machines are used to financially exploit vulnerable seniors.  In fact, the Federal Trade Commission and FinCen have specifically warned companies like Westcliff and Cash Cloud that their Bitcoin Automated Teller Machines (BTM's) were being used to target vulnerable adults by scammers impersonating law enforcement or "bank security."  Such scammers trick or intimidate vulnerable adults into withdrawing cash from their bank or retirement accounts for deposit into BTM's using QR codes sent by the scammers to seniors. https://consumer.ftc.gov/consumer-alerts/2022/01/new-crypto-payment-scam-alert.

2

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

13. Knowing of this danger, Defendants Westcliff and Cash Cloud have an obligation to prevent their equipment from being used as an easy tool for the financial exploitation of seniors.

14. And Defendants Westcliff and Cash Cloud should never retain or keep transaction fees or other "fruits" of such scams.

**Prevention of Senior Financial Exploitation**

15. Fortunately, senior financial exploitation such as described above is preventable by following three simple rules:

    a.  Identify and flag large cash transactions, particularly when they involve older adults who fit exploitation victim profiles or patterns;

    b.  Place holds on flagged transactions until their legitimacy is verified.

    c.  Warn customers and users.

**a. Flagging Suspicious Cash Transactions.**

16. As financial institutions, Defendants already must follow the Bank Secrecy Act (BSA) and its Anti-Money Laundering implementing regulations ("AML rules") designed to detect and report suspicious activity, including of the type described herein.

17. The BSA and AML rules identify numerous red flags for suspicious activity and require reporting of cash transactions of over $10,000.00 per day aggregate (which themselves are a "red-flag" particularly when involving senior citizens with no history of such transactions).

18. Other red-flags red-flags for fraud or suspicious activity include:

    a.  Multiple large transactions in whole dollar amounts;

    b.  Fund transfer activity that is unexplained, repetitive or shows unusual patterns;

    c.  Currency transaction patterns that show a sudden change inconsistent with normal activities.

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

19. The transactions involved were, on their face, suspicious and should have been flagged (and reported). Had they been, particularly by BANA at the point of withdrawal, no further victimization could have occurred.

20. In addition to flagging all such transactions, Defendants must be even more careful when they involve adults fitting certain known victim profiles, as these customers are most in need of protection and are frequent targets of fraud.

21. Defendants must follow "Know Your Customer" (KYC) rules and, if they do so, are able to know when their customer is, potentially, a vulnerable senior.

22. Thus, when Defendants see suspicious "Suspicious Cash Transactions" at the point of customer contact involving a "Vulnerable Adult," i.e., they should identify and flag such transactions as possible fraud.

## b. Placing Holds on Such Transactions.

23. Once a suspicious transaction is identified, Defendants have both the physical ability and authority to hold the transaction and under certain circumstances, refuse to complete it.

24. South Carolina Code §43-35-87 (Financial Exploitation) provides, *inter alia*, that:

    a. Financial institutions have the authority to decline, or place holds on customer transaction requests involving the account of a vulnerable adults;

    b. That such hold may be maintained, *inter alia*, until a determination is made by the financial institution that allowing the transaction will *not* result in the financial exploitation of a vulnerable adult;

    c. That financial institutions acting in good faith are immune from liability for placing such holds, but that "[n]othing in this section is intended to nor does it limit or shield in any manner a financial institution *from civil liability against any claim, including reasonable attorneys' fees, costs, and litigation expenses, for participating in or materially aiding the financial exploitation of a vulnerable adult*." [Emphasis Added].

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

25. As the facts below would show, if Defendants – all of whom are financial institutions - had followed the above rules, Plaintiff would not have suffered the grievous financial harm inflicted upon her. However, they did not, and chose instead to material aid the exploitation of Plaintiff in the manner set forth below.

## c. Warnings.

26. If nothing else, as a final attempt to derail the victimization, Defendants can warn potential victims before they withdraw cash from bank accounts, or deposit cash into BTM's.

27. For example, other national BTM chains place large warnings on their machines stating:

> WARNING   Have you received a phone call from someone demanding payment in Bitcoin?  THIS IS LIKELY A SCAM   All Bitcoin transactions are irreversible. Send to your own wallet only. NOT SURE if you are being scammed?  CALL US for assistance at......"

28. If adequate warnings are given, victimization can be avoided. See, e.g., Exhibit A for photo.

## FACTS

29. In February of 2022 scammers initially posing as Microsoft customer support gained remote access Plaintiff's computer and/or phone and, upon information and belief, learned of her account(s).

30. Plaintiff was then contacted by – or told to call – a phone number, where an individual named "David" who identified himself as bank security or law enforcement, and who told Plaintiff that her BANA accounts were jeopardized by an internal BANA fraud ring. She was directed her to withdraw her money immediately from BANA to safeguard it.

### a. BANA

31. Plaintiff is a 25-year customer of Defendant BANA.

32. Plaintiff has a long history of making small withdrawals, transfers, or deposits.

5

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

33. Besides her checking account with Defendant BANA, Plaintiff had a savings account containing approximately $33,000.00. Coupled with an Edward Jones retirement account containing approximately $70,000.00, this was her life savings.

34. Defendant BANA knew **by its own published standards that Plaintiff fit the profile of a senior vulnerable to financial exploitation** or fraud when, early in 2022, that is exactly what it helped to bring about.

35. On February 16, 2022, Plaintiff went to Defendant BANA's Georgetown branch and asked to withdraw $31,000.00 which represented all or substantially all her savings account.

36. Defendant BANA asked no questions of Plaintiff at this request but stated that the branch did not have sufficient cash on hand and that she would have to visit the Myrtle Beach BANA branch.

37. Upon information and belief, after Plaintiff left the Georgetown branch, no employee of that branch raised the slightest concern or question, nor did it contacted the Myrtle Beach branch advising of the fact that its 73-year-old customer was coming to withdraw $31,000.00 in cash.

38. When Plaintiff arrived at the Myrtle Beach branch, as in Georgetown, no questions were asked. She was handed $31,000.00 in cash, which she left the bank with. As set forth below, all this money would soon be deposited in cash – and lost – to the scammers by means of BTM's owned and operated by Defendants Westcliff and Cash Cloud.

39. Just days after BANA cashed out Plaintiff's savings account, the scammers learned of additional funds in her Edward Jones retirement account; having no doubt seen the ease with which BANA released funds without asking questions, the scammers directed Plaintiff to transfer the Edward Jones funds (representing the remainder of her entire life savings) to BANA, so that it too could be withdrawn easily.

40. Thus, on February 22, 2022, Edward Jones transferred $70,899.00 into Plaintiff's BANA account, which she was again advised to withdraw immediately.

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

41. On or after February 22, 2022, Plaintiff returned to BANA and withdrew the funds, at least $40,000 of which was in cash.

42. As before, not a single question or concern was raised by BANA's employees as their 73-year-old customer – who fit the profile of a fraud victim in their own literature – left the bank with more cash than most people will ever see in one place in a lifetime.

43. Defendant BANA did not flag any of these transactions as suspicious or make any report, despite Plaintiff fitting the bank's own vulnerable adult profile.

44. Defendant BANA took no action to hold or prevent any transactions.

45. Defendant BANA did not warn Plaintiff – or even ask questions – about the transactions.

### b. BTM Defendants.

46. Defendants Westcliff and Cash Cloud's operate BTM's in convenience stores, with locations published online.

47. As is typical with the scam – and exactly as warned of by the FTC – a QR code was sent to her phone to be scanned by Defendants' BTM's so funds could be paid into the scammers crypto wallet(s).

48. Plaintiff was allowed to deposit $43,500 into Westcliff's BTM(s) and $60,500 into Cash Cloud's BTM's.

49. Some of these transactions involved deposits of $12,500 in a single transaction.

50. Some of these transactions involved multiple deposits into the same machine, – on camera – showing $25,000 in cash being deposited into Defendants' machines in a span of 10-20 minutes by a 73-year-old woman.

51. All these transactions were highly suspicious and should have been flagged.

52. Both Defendants had (and photographed) Plaintiff's driver's license and knew – or should have known – that a woman fitting the profile of a vulnerable adult appeared to be depositing tens of thousands of dollars in cash but did not identify that as suspicious.

53. Neither Defendant took any action to hold, delay, or prevent any transaction.

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

54. Neither BTM contained any type of warning label such as the above (**which described almost exactly what was happening to Plaintiff**) and which may have served to dissuade Plaintiff from interacting with the machines.

55. Instead, upon information and belief, Defendants Westcliff and Cash Cloud took – and retain to this day – fees for each transaction.

56. Communications to both Defendants' customer service departments by Plaintiff's son have been unreturned.

### c. Violation of Federal Obligations by All Defendants

57. Upon information and belief, at no point did any Defendant herein raise any concern or flag, file a Suspicious Activity Report (SAR), or make any other report regarding these transactions.

58. No Defendant – despite having the ability to do so with immunity – made any attempt to place a hold on any transaction or verify its legitimacy.

59. The above transactions – and scam – and further losses were discovered and prevented not by Defendants, but by Plaintiff's just days after the transactions were completed. The theft was then reported to law enforcement.

60. No Defendant made any report to law enforcement.

61. No Defendant – after being notified by Plaintiff's relatives of the foregoing, took any action to preserve evidence.

62. The wrongful acts of the Defendants described caused the following concrete and particularized harms and losses:

    a. Out of pocket losses over $104,000.00

    b. Emotional distress including humiliation, fear, worry, anxiety, and depression, and the physical manifestations of same;

    c. Lost time spent attempting to rectify the harm caused;

    d. Such other harms and losses as may be shown at trial.

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

63. Defendants must pay all sums needed to compensate for all harms and losses proximately caused by the wrongful acts described herein, to return Plaintiff to the position enjoyed before wrongful injury.

64. For those harms and losses reasonably expected to continue, Defendants must compensate for their expected continuing impact and effect,

65. Additionally, due to the intentional or reckless nature of the wrongful acts described herein, Defendants must pay nominal or symbolic damages and punitive damages to punish said conduct and deter its reoccurrence.

66. Defendants must further have to pay attorney's fees and costs, as well as the penalties mandated by its violation of important statutory rights referenced below.

67. The harms and losses caused by Defendants are likely to be redressed by a favorable judicial decision, through an award of the above damages, assessment of fines and punitive damages, an award of attorney's fees and all litigation costs, and injunctive relief.

## FOR A FIRST CAUSE OF ACTION AS TO

## ALL DEFENDANTS

### (Participating or Materially Aiding

### Financial Exploitation of a Vulnerable Adult)

68. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

69. Plaintiff is a vulnerable adult based on her advanced age and/or her inability to adequately provide for her own financial protection. See, S.C. Code §43-5-10(11).

70. The acts described of herein involve the "exploitation" of Plaintiff including the improper, unlawful, or unauthorized use of the funds, assets … of a vulnerable adult by a person for the profit or advantage of that person or another person" and the "causing [of] a vulnerable adult to purchase goods or services for the profit or advantage of the seller or another person through (1) undue influence, (ii) harassment, (iii) duress, (iv) force, (v)

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

coercion or (vi) swindling by ……defrauding the vulnerable adult through cunning arts or devices that delude the vulnerable adult and cause [her] to lose money." §43-5-10(3)(b) and (c).

71. Defendants are both persons and financial institutions as defined by S.C. §43-5-87(A).

72. Defendants, through their actions and failures to act, participated in and materially aided the financial exploitation of Plaintiff; without Defendants' actions and failures, such exploitation could not have occurred.

73. Additionally, Defendants Westcliff and Cash Cloud <u>profited</u> from the exploitation of Plaintiff via transaction or other fees for use of its BTM.

74. S.C. Code  §43-35-87(H) allows for claims to be asserted by the vulnerable adult, or on [her] behalf by an appropriate guardian or representative who is not involved in or otherwise suspected of participating in the financial exploitation of the vulnerable adult, by filing a civil action in circuit court for civil liability against financial institutions "participating or materially aiding in" the financial exploitation of a vulnerable adult, to include reasonable attorneys' fees, costs, and litigation expenses. 1

75. Based on Defendants' actions and failures to act, Plaintiff is entitled to recover her financial and non-pecuniary losses, costs, and attorney's fees.

## FOR A SECOND CAUSE OF ACTION AS TO
## ALL DEFENDANTS
### (Violation of SC Code §39-5-10, Unfair Trade Practices Act)

76. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

---

[1] See also, §43-35-80(A) which references the availability of a "private civil action" in addition to actions by the SC Attorney General.

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

77. The activities of Defendants described above constitute "trade or commerce" as defined
by South Carolina Code Section §39-5-10, et.seq., (as amended).

78. The actions of the Defendants, above-described, constitute unfair, oppressive and
deceptive acts and practices in the conduct of trade and commerce, as prohibited by the
South Carolina Unfair Trade Practices Act, §39-5-10 et.seq., and are willful violations
thereof.

79. The actions of the Defendants have a real and substantial potential for repetition and
affect the public interest, and were in fact repeated multiple times by both Defendants.

80. The Plaintiff suffered an ascertainable loss due to the unlawful actions of the Defendants,
entitling Plaintiff to actual damages in an amount to be proven at trial, treble said actual
damages, and an award of attorney's fees and costs.

### FOR A THIRD CAUSE OF ACTION
### AS TO ALL DEFENDANTS
**(Negligence Per Se / Negligent Supervision and Training, Banking Negligence)**

81. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to
the extent not inconsistent with this cause of action.

82. Plaintiff was, wittingly and unwittingly, a customer of Defendants.

83. Defendants charged Plaintiff for and benefitted or sought to benefit financially from their
relationship with Plaintiff.

84. Defendants charged Plaintiff for and benefitted or sought to benefit financially from their
relationship with Plaintiff.

85. Defendants thereby owed Plaintiff a duty of due careand a duty to act in good faith.

86. If Defendants' acts were negligent or reckless but otherwise not covered by Title 43, they
nevertheless breached the standards required by said statute and constitute negligence per
se.

11

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

87. Additionally, Defendants knew of serious, verifiable risks posed to seniors like Plaintiff from not only the above-mentioned publications and their own internal information, but through warnings from the federal Consumer Financial Protection Bureau (CFPB) over six years ago, directing financial institutions to:

   a.  Train staff to recognize financial abuse;

   b.  Use fraud detection technologies;

   c.  Offer age-friendly services;

   d.  Report suspcious activity to authorities.

   e.  Warn of potential fraud.

2. Upon information and belief, Defendants failed to employ or adequately employ the of the above measures, causing preventable harm being inflicted on their customer, and yet:

   a.  Failed to identify any of the above cash withdrawals as suspicious despite multiple indicators of fraud;

   b.  Failed to report them to authorities;

   c.  Failed to place any type of hold on any transaction;

   d.  Failed to freeze the accounts to preserve funds;

   e.  Failed to make any criminal investigation following notice of fraud;

   f.  Failed in such other respects as may be shown at trial.

   g.  Allowed transactions over their "daily limits" without respect to those limits.

   h.  Failed to warn.

   i.  Failed to preserve information that would aid apprehension of criminals, seizure of funds, or victimization of others.

88. The collective failures committed, given the knowledge of vulnerabilities possessed by DefendantS, breach their obligations to Plaintiff and the public.

89. As a direct and proximate result of the negligent, careless, reckless, willful and wanton acts and omissions of the Defendants, judgment should be granted to the Plaintiff for both actual and punitive damages.

12

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

## FOR A FOURTH CAUSE OF ACTION

## AS TO DEFENDANTS WESTCLIFF & CASH CLOUD

### (Ultrahazardous Activity)

90. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

91. Defendant Westcliff's BTM's involve a known and verifiable risk of serious harm to persons or property because they allow for the conversion and deposit of money into "wallets" that, unlike traditional accounts, may be anonymous.

92. Such accounts are used for legitimate activities but, because of their anonymity, widely used by criminals including to commit scams such as that which is the subject of this action.

93. BTM's, as designed, cannot be operated wihout this risk.

94. Using BTM's is not common to members of Plaintiff's community.

95. By using Defendant's BTM Plaintiff sustained an injury caused, in part, by Defendant Westcliff and Cash Cloud, including by their failure to warn.

96. As a direct and proximate result of its creation, design and intentional placement of Defendants' BTM into its community, Plaintiff sustained injuries for which Defendant is liable.

## FOR A FIFTH CAUSE OF ACTION

## AS TO DEFENDANTS WESTCLIFF & CASH CLOUD

### (Conversion)

97. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

98. Upon information and belief, Defendants charge BTM fees based on a percentage of the transaction amount.

99. Upon information and belief, for its role in facilitating the fraudulent transactions that are the subject of this action, Defendants were paid and retain more than $1,000.00.

13

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

100. The aforementioned actions constitute conversion of the money or property of Plaintiff.

101. Because of the unlawful conversion by Defendant, injuries have been inflicted upon Plaintiff that may be recovered by way of judgment against Defendants for a sum over the value of all property converted, plus interest, other consequential damages, punitive damages, costs, and attorney's fees.

## FOR A SIXTH CAUSE OF ACTION
## AS TO DEFENDANTS WESTCLIFF & CASH CLOUD
### (Unjust Enrichment)

102. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with the allegations of this cause of action.

103. The above fraudulent activities have enriched Defendants unfairly at the expense of Plaintiff.

104. There is no justification for Defendants retaining any sum from the fraudulent activities.

105. If there is no other adequate remedy at law for preventing Defendants from being unjust enriched, this Court should issue an order directing return of said sums, plus interest and such other relief as is just and proper

## PRAYER FOR RELIEF

WHEREFORE, the prayer of the Plaintiff judgment in an amount sufficient to compensate Plaintiff for actual damages, with punitive damages, statutory damages, such interest as is allowable by law, costs, attorney's fees, and such other relief as is just and proper.

Respectfully Submitted,

14

ELECTRONICALLY FILED - 2022 Oct 11 11:36 AM - GEORGETOWN - COMMON PLEAS - CASE#2022CP2200868

DAVE MAXFIELD, ATTORNEY, LLC

s/ David A. Maxfield

Dave Maxfield, Esq., SC Bar No. 7163
P.O. Box 11865
Columbia, SC 29211
(803) 509-6800
(855) 299-1656 (fax)
dave@consumerlawsc.com

October 11, 2022

15

STATE OF SOUTH CAROLINA

COUNTY OF GEORGETOWN

IN THE COURT OF COMMON PLEAS

FIFTEENTH JUDICIAL CIRCUIT

Christine Borden,

Plaintiff,

vs.

Bank of America, NA ("BANA") and
Westcliff Technologies, Inc., d/b/a
National Bitcoin ATM, and Cash Cloud,
Inc., d/b/a Coin Cloud,

Defendants.

Case No. 2022-CP-22-0868

CERTIFICATE OF SERVICE

I, the undersigned employee of Dave Maxfield, Attorney, LLC do hereby swear and

affirm that on the 12th day of October 2022, I served the foregoing **Summons and**

**Complaint**, by sending a copy of same by U.S. Certified Mail, Restricted Delivery,

Return Receipt to the following:

Bank of America, NA
c/o CT Corporation System
2 Office Park Court Ste. 103
Columbia, South Carolina 29223

Westcliff Technologies, Inc., d/b/a National Bitcoin ATM
c/o CSC-Lawyers Incorporating Service
2710 Gateway Oaks Dr Ste. 150N
Sacramento, CA 95833

Cash Cloud, Inc., d/b/a Coin Cloud
c/o Smith & Shapiro, PLLC
3333 E. Serene Ave., Suite 130
Henderson, NV 89074

Janel Streater

DATED: October 12, 2022
Columbia, South Carolina