IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CHRISTINE BORDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CASE NO.: 2:22-cv-04076-BHH |
| BANK OF AMERICA, NA ("BANA") ) | |
| AND WESTCLIFF TECHNOLOGIES, ) | |
| INC., D/B/A NATIONAL BITCOIN ATM, ) | |
| AND CASH CLOUD, INC., D/B/A/ COIN ) | |
| CLOUD, ) | |
| ) | |
| Defendants. ) | |

PLAINTIFF'S RESPONSE
TO DEFENDANT BANK OF AMERICA'S
MOTION TO DISMISS AMENDED COMPLAINT

### I.    INTRODUCTION

This lawsuit comes before the court by Plaintiff Christine Borden's ["Plaintiff"] Complaint for relief against the various Defendants as a result of a cryptocurrency scam perpetrated against Plaintiff. On October 11, 2022, Plaintiff filed her Complaint ("Complaint" in the Court of Common Pleas for the Fifteenth Judicial Circuit, Georgetown County, South Carolina, against Defendants Bank of America, NA ("BANA"); Westcliff Technologies, Inc. D/B/A National Bitcoin ATM ("Westcliff"); and Cash Cloud, Inc., D/B/A Coin Cloud (Cash Cloud). On November 16, 2022, BANA removed the case from state court to the United States District Court for the District of South Carolina, having the consent of the other defendants.

In her Amended Complaint (ECF 8) Plaintiff alleges two causes of action against the Defendant BANA: first, that BANA violated S.C. Code § 43-35-87(H), a provision of the Omnibus Adult Protection Act. S.C. Code § 43-35-5; second, that BANA was negligent, both

1

*per se* and in its failure to supervise and train its employees to protect its own customers. Both claims in Plaintiff's Complaint are amply pled to comply with the Rule 8 Standard, because they are "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, both claims against BANA withstand the 12(b)(6) motion to dismiss because 1) a private cause of action under S.C. Code § 43-35-87(H) can be inferred through legislative intent, and 2) because BANA breached a duty of care to its customer, and the claims are not barred by the economic loss rule.[1]

Thus, Plaintiff's claims against BANA adequately allege valid causes of action, pursuant to the Rule 8 standard and should therefore not be dismissed.

## II.     FACTS

In February of 2022, Plaintiff received communication form individuals purporting to be Microsoft customer support representatives. Plaintiff, who is a 73 year-old woman who is not, by her own admission, technologically experienced, believed these individuals to be who they claimed to be. In reality, these unscrupulous individuals were scammers, and, through this act of deception, were able to gain access to Plaintiff's computer and phone. (ECF. 8, p.5, ¶29). Following their infiltration of Plaintiff's private devices, the scammers intimated to Plaintiff that her financial accounts, specifically those held by BANA, were in danger of being exploited by a fraud ring within the bank itself. (ECF 8, p.5, ¶30). Accordingly, they counseled that Plaintiff was to withdraw the entirety of her monetary resources kept in a Bank of America account. *Id.* Trusting, due to her lack of expertise regarding computers, that the scammers were indeed well-meaning Microsoft employees, Plaintiff arrived at her local branch of Bank of America, located

---

[1] As set forth in the Amended Complaint, BANA's own literature identified Plaintiff as "vulnerable" well before it repeatedly and unquestioningly handed over her life savings to her in cash transactions. (ECF 8, p. 2, ¶9).

2

in Georgetown, requesting a withdrawal of $31,000.00. *Id.* at p. 6, ¶35. The employees at the Georgetown branch advised her that a small-town bank such as theirs did not carry such an exorbitant amount of cash, and that she should visit the branch located in tourist hot-spot Myrtle Beach if she should desire to withdraw her entire life savings. *Id.* at p. 6, ¶38. In accordance with the advice given by Bank of America employees, Plaintiff promptly drove north to Myrtle Beach, withdrawing $31,000.00 from her Bank of America account in Myrtle Beach. *Id.* Following this high-priced withdrawal, Plaintiff deposited the money withdrawn from her account into bitcoin ATMs that were owned by Defendants Westcliff and Cash Cloud. *Id*. at p. 7, ¶48-50.

In the ensuing days, the scammers, still having access to Plaintiff's devices as a result of her own trust in strangers, discovered that Plaintiff held a substantial fortune in a retirement account. Upon learning of this veritable pot of gold, the scammers beseeched Plaintiff to deposit $70,899.00 into her Bank of America Account for withdrawal. *Id.* at pp. 6-7, ¶¶ 39-40. On February 22, 2022, she transferred the funds as instructed, and was allowed by BANA employees to withdraw $40,000.00 from the account immediately. *Id.* at p. 7, ¶¶ 40-41. Next, she deposited the $40,000.00 in bitcoin ATMs owned by Defendants Westcliff and Cash Cloud. *Id.* at p. 7, ¶¶ 48-50.

BANA employees did not only advise a frail old woman from withdrawing tens of thousands of dollars from her account on two separate occasions, but they also advised her where best to do it. Accordingly, Plaintiff brought claims against BANA for violation of the S.C. Code § 43-35-87(H) and various forms of Negligence. On November 23, 2022, Defendant BANA filed a Rule 12(b)(6) Motion to Dismiss the Complaint with regard to itself. (ECF. 4-1). Plaintiff filed an amended complaint on December 19, 2022. (ECF. 8). On January 3, 2022, Defendant BANA

filed a second 12(b)(6) Motion to Dismiss the amended complaint with regard to itself. (ECF. 14).

### III. STANDARD OF REVIEW

Under Rule 8(a)(2), all a complaint needs to pass muster is to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to meet this standard, all a Plaintiff need not enter a "fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A Motion to Dismiss for an alleged violation of the Rule 8 standard is filed under the Rule 12(b)(6) standard for "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). Dismissal is proper under this rule only "if [the complaint] tenders 'naked assertion[s]' devoid of 'further factual elaboration.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009) (*quoting Twombly*, 550 U.S. at 549). Nonetheless, the court, in reviewing such a claim is required to accept all of the factual allegations contained within the complaint as true, even though it is "not bound to accept as true a legal conclusion as a factual allegation." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 550).

A court should not grant a Rule 12(b)(6) motion unless the plaintiff can prove no set of facts that would support their claim and would entitle them to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.*, at 1134. 3:18-cv-02394-JFA Date Filed 09/24/18 Entry Number 12 Page 2 of 123.

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The question on a Rule 12(b)(6) motion is not whether the plaintiffs ultimately will prevail, but whether the plaintiffs may proceed in litigation. *Skinner v. Switzer*, 131 S. Ct. 1289 (2011)

IV.     ARGUMENT

A.  PLAINTIFF'S CLAIM PURSUANT TO S.C. CODE § 43-35-87(H) WITHSTANDS THE 12(b)(6) STANDARD.

i. **S.C. Code § 43-35-87(H) Does Specify an Explicit Private Right of Action, But If It Does Not, It Clearly Contains an Implicit One.**

Though the plain language of S.C. Code § 43-35-87(H) does not contain an explicit private right of action for vulnerable adults against financial institutions, this Court may, as other courts have done, imply such a right of action, consistent with the legislatively intended purpose of the Omnibus Adult Protection Act.

The relevant provision of the Act states:

> If the determinations and actions of a financial institution or an employee of a financial institution are made in good faith and in accordance with the provisions of this section, then the financial institution or employee shall be immune from criminal, civil, or administrative liability for declining transactions to disburse

5

> monies pursuant to this section, and for taking actions in furtherance of a determination, including making a report or providing access to or copies of relevant records to an investigative entity or law enforcement agency. Nothing in this section is intended to nor does it limit or shield in any manner a financial institution from civil liability against any claim, including reasonable attorneys' fees, costs, and litigation expenses, for participating in or materially aiding the financial exploitation of a vulnerable adult. Any such claims shall be asserted by the vulnerable adult, or on his behalf by an appropriate guardian or representative who is not involved in or otherwise suspected of participating in the financial exploitation of the vulnerable adult, by filing a civil action in circuit court.

S.C. Code § 43-35-87(H). Defendant BANA is correct to point out that this provision is a recent addition to the Omnibus Adult Protection Act, codified as S.C. Code §43-35, which was amended in 2021 to include the above-quoted section. SC LEGIS. 84 (2021), 2021 South Carolina Laws Act 84 (S.425); *See also* 12 S.C. Jur. Governor § 49.1. This amendment was in fact adopted in order to "authorize financial institutions to decline certain transaction requests in cases of the suspected financial exploitation of vulnerable adults." *Id.*

Defendant BANA is incorrect, however in its assertion that the legislature did not intend for a private right of action to be created under this provision. First, they state that there has not been a single action brought under this provision since its enactment, so that must mean that there is no possible private action that can be brought. Since this provision was enacted less than two years ago, this logic is unsound. A much more realistic assumption from this lack of jurisprudence is that no party has had the opportunity to have asserted and litigated such a claim to the point that an opinion was written about it in the short time since enactment. Further, just because something has not been done before in law does not mean that it is not able to be done.

Second, BANA quotes the following language from the statute to support its claim that no private right of action exists: "Nothing in this section is intended to nor does it limit or shield in any manner a financial institution from civil liability against any claim." S.C. Code § 43-35-87(H). They argue that this language merely notes that "the civil immunity provided to financial

6

institutions is not unlimited in nature." (ECF 14-1). Perhaps BANA stopped reading the statute after the sentence that they felt supported their argument best, because the very next sentence of the statute states that "Any such claims shall be asserted by the vulnerable adult, or on his behalf by an appropriate guardian or representative who is not involved in or otherwise suspected of participating in the financial exploitation of the vulnerable adult, by filing a civil action in circuit court." S.C. Code § 43-35-87(H). If language stating that an action under this section "shall be asserted by the vulnerable adult" does not create a private right of action, it is entirely unclear what language would.

If the Court does not, however, agree with Plaintiff that the above-quoted language clearly intends for the creation of a private right of action, a private right of action may be easily implied from the legislative intent behind the Omnibus Adult Protection Act. "In determining whether a statute creates a private cause of action [in South Carolina], the main factor is legislative intent." *Doe v. Marion*, 645 S.E.2d 245, 248 (S.C. 2007) (finding that the statute for reporting child abuse does not support a private cause of action for negligence per se against a doctor).

> The legislative intent to grant or withhold a private right of action for violation of a statute or the failure to perform a statutory duty is determined primarily from the language of the statute . . . . In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity is not subject to a construction establishing a civil liability. When a statute does not specifically create a private cause of action, one can be implied only if the legislation was enacted for the special benefit of a private party.

*Id*. (internal citations omitted). As demonstrated previously, the language of the relevant statute explicitly denotes an intention of creating a civil liability, where it says: "Nothing in this section is intended to nor does it limit or shield in any manner a financial institution from civil liability

7

against any claim . . . . Any such claim shall be asserted by the vulnerable adult" S.C. Code § 43-35-87(H).

Further, such a private right of action is consistent with the purpose of the Omnibus Adult Protection Act. In the *Williams v. Watkins* case, the South Carolina Court of Appeals stated that the purpose of the Act which contains S.C. Code § 43-35-87(H) is to:

> [A]ddress the continuing needs of vulnerable adults; define abuse, neglect, and exploitation in a uniform manner, without regard to setting; clarify reporting requirements; provide victims with emergency protective custody; define the court's role in adult protection; and **provide civil and criminal penalties to perpetrators of the abuse, neglect, or exploitation of vulnerable adults.**

*Williams v. Watkins*, 665 S.E.2d 243, 245 n. 3 (Ct. App. 2008) (emphasis added). This purpose language specifically denotes an intention to "provide civil . . . penalties to perpetrators of . . . vulnerable adults." *Id.* Civil penalties can only be instituted if civil suits may be filed. Accordingly, the legislature clearly intended for the statute within which exists S.C. Code § 43-35-87(H) to contain a private right of action. Thus, Plaintiff may sue under such an action.

ii. **Plaintiff is a Vulnerable Adult with Respect to the Definition Accorded By the Omnibus Adult Protection Act.**

Despite what is claimed by Defendant BANA, Plaintiff is a vulnerable adult with respect to the definition from S.C. Code § 43-35-10.

The Omnibus Adult Protection Act, as previously stated, exists in part to "provide civil and criminal penalties to perpetrators of the abuse, neglect, or exploitation of vulnerable adults." *Watkins*, 665 S.E.2d at 245 n. 3. Thus, in order to qualify for such a private action for civil damages, the plaintiff must be a "vulnerable adult." A vulnerable adult, as proffered by S.C. Code § 43-35-10(11) is

> [A] person eighteen years of age or older who has a physical or mental condition which substantially impairs the person from adequately providing for his or her own care or protection. This includes a person who is impaired in the ability to

8

> adequately provide for the person's own care or protection because of the infirmities of aging including, but not limited to, organic brain damage, advanced age, and physical, mental, or emotional dysfunction.

S.C. Code § 43-35-10(11).

Plaintiff is 73 years old, which by most metrics clearly qualifies her as person of "advanced age." Further, while it is true that she does live on her own, she lives off of nothing but her $1,250 dollar a month social security check. This equates to nothing more than $15,000 dollars a year, an income which puts her in a bracket just barely above the poverty line. "Income Guidelines," https://sclegal.org/income-guidelines/ (last visited Dec. 14, 2022). Further, her advanced age led her to being a prime target for scammers, resulting in the loss of nearly $100,000 of her own personal savings. This alone demonstrates why Plaintiff is unable to "adequately provide for the [her] own care or protection." Thus, Plaintiff is a "vulnerable adult" under the meaning of the statute.

### B. PLANTIFF'S NEGLIGENCE CLAIMS WITHSTAND THE 12(b)(6) STANDARD.

Plaintiff has asserted a negligence claim for ""Negligence Per Se/Negligent Supervision and Training, Banking Negligence" (ECF 8, p. 12).

Under South Carolina law, "to establish a cause of action in negligence, three essential elements must be proven: (1) duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." Bishop v. S.C. Dep't of Mental Health, 331 S.C. 79, 88, 502 S.E.2d 78, 82 (1998)

### i. Plaintiff Adequately Pled an Action for Negligence Per Se. because a Statutory Cause of Action was Breached and Plaintiff is a Party Intended to be Protected by Statute.

Plaintiff's Complaint does in fact assert that BANA breached the standard of the South Carolina Omnibus Adult Protection Act which constitutes negligence per se. (See ECF 1-1, p. 15, ¶¶85-86).

Defendant BANA is correct in stating that a statute must create a private cause of action in order for a party to bring forth an action of negligence per se. *Doe v. Marion*, 645 S.E.2d 245 (2007)."In determining whether a statute creates a private cause of action, the main factor is legislative intent . . . ." Id. at 398. Further, in order to identify legislative intent the court must look first to the language of the statute. Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n, Case No. 3:15-CV-01300-JMC, 2016 WL 3027552, at *8 (D.S.C. May 27, 2016)(citing *Doe v. Marion*, 645 S.E.2d 245 (2007)). The issue is that is where Defendant stops. In fact, Defendant does not stop, as previously stated, with a *complete* reading of the plaint text of the statute. Instead, Defendant BANA stops at the second-to-last sentence of the statute, where the text discusses the lack of absolute immunity against civil liability that is held by financial institutions. If Defendant BANA read one sentence further, they would find that the legislature did intend for the statute to allow for civil actions to be filed against financial institutions who violate its provisions. In relevant part, the statute reads: "Any such claims shall be asserted by the vulnerable adult, or on his behalf by an appropriate guardian or representative who is not involved in or otherwise suspected of participating in the financial exploitation of the vulnerable adult, by filing a civil action in circuit court." S.C. Code § 43-35-87(H). This language clearly evidences an intent by the legislature to allow private parties—the aforementioned "vulnerable adult[s]"—to file "a civil action in circuit court."

Additionally, this clearly comports with the overall purpose of the Omnibus Adult Protection Act, (of which § 43-35-87(H) is a part) which is to:

> [A]ddress the continuing needs of vulnerable adults; define abuse, neglect, and exploitation in a uniform manner, without regard to setting; clarify reporting requirements; provide victims with emergency protective custody; define the court's role in adult protection; and **provide civil and criminal penalties to perpetrators of the abuse, neglect, or exploitation of vulnerable adults.**

*Williams v. Watkins*, 665 S.E.2d 243, 245 n. 3 (Ct. App. 2008) (emphasis added).  Without a private right of action, it is very difficult for the courts to "provide civil and criminal penalties to perpetrators of the abuse, neglect, or exploitation of vulnerable adults." *Id.* Accordingly, a private cause of action does exist under S.C. Code § 43-35-87(H).

Next, in order to prove Negligence Per Se, the party bringing the claim must demonstrate that "(1) the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) the plaintiff is a member of the class of persons the statute is intended to protect." *J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 553 (D.S.C. 2020), aff'd, Case No. 20-1767, 2021 WL 4859603 (4th Cir. Oct. 19, 2021) (*citing Whitlaw v. Kroger Co.*, 410 S.E.2d 251 (1991)). As stated in the foregoing paragraph, the "essential purpose of the statute" in which S.C. Code § 43-35-87(H) is contained is to "provide civil and criminal penalties to perpetrators of the abuse, neglect, or exploitation of vulnerable adults." Further, the stated purpose of the specific section in question is to "authorize financial institutions to decline certain transaction requests in cases of the suspected financial exploitation of vulnerable adults." Thus, the statute as a whole is aimed at protecting vulnerable adults from exploitation. Plaintiff clearly has been exploited, as she has had nearly $100,000 of her own money stolen by scammers who took advantage of her advanced age an unfamiliarity with technology to pose as Microsoft Support workers. By doing this, they were able to exploit her financially, stealing a hefty portion of her assets. Further, the purpose of the specific section in question is to authorize institutions like Defendant BANA to prevent people like Plaintiff from undergoing financial exploitation by preventing them from accessing their accounts. Thus, this is clearly the type of harm that the statute was designed to prevent.

Finally, Plaintiff was clearly "a member of the class of persons the statute is intended to protect." *Walgreens*, 470 F. Supp. 3d at 553. The class intended to be protected by this statute is clearly "vulnerable adults." As defined by S.C. Code § 43-35-10(11), a "vulnerable adult is

> [A] person eighteen years of age or older who has a physical or mental condition which substantially impairs the person from adequately providing for his or her own care or protection. This includes a person who is impaired in the ability to adequately provide for the person's own care or protection because of the infirmities of aging including, but not limited to, organic brain damage, advanced age, and physical, mental, or emotional dysfunction.

S.C. Code § 43-35-10(11). Plaintiff is a vulnerable adult because she is of the advanced age of 73 years old, lives with a monthly income close to the poverty line, and was clearly exploited out of nearly $100,000 dollars, which indicates a lack of ability to "adequately provid[e]" for her "own care or protection." Because of her advanced age and unfamiliarity with the technology involved, Plaintiff was unable to protect herself from exploitation of a significant portion of her wealth and was unable to care for financial well-being. Thus, she is a vulnerable adult and is a member of the class that S.C. Code § 43-35-87(H) was enacted to protect. Accordingly, she has adequately pled a cause of action for Negligence Per Se.

### ii. Plaintiff Was Owed a Duty of Care by Defendant BANA, Because she was a Customer of BANA.

Plaintiff's Complaint alleges satisfactorily that Defendant failed to meet the require elements of negligent supervision and training. Defendant argues that this cause of action fails because Plaintiff failed to establish either that a BANA employee intentionally harmed Plaintiff, or that BANA owed Plaintiff a duty of care. Plaintiff contends that BANA clearly owed Plaintiff a duty of care as a customer of BANA.

South Carolina recognizes a cause of action for negligent supervision and training when an employee intentionally harms another or when the employer has a legal duty of care arising

12

out of contract flowing to a Plaintiff not in privity. *Degenhart v. Knights of Columbus*, 309 S.C. 114 (1992); See also *Walgreens*, Case No. 20-1767, 2021 WL 4859603, at *7 (4th Cir. Oct. 19, 2021). Plaintiff does not allege that any employees of Defendant BANA intentionally harmed Plaintiff. Rather, she does allege that BANA owed a duty of care to Plaintiff.

Defendant claims that "[i]t is well established that financial institutions owe no duty of care to customers or non-customers," citing to the *Eisenberg v. Wachovia Bank, N.A.* case to support this assertion. *Eisenberg v. Wachovia Bank*, N.A., 301 F.3d 220 (4th Cir. 2002). This is plainly an incorrect reading of *Eisenberg.* The case does say that "banks do not owe a duty of care to noncustomers." *Eisenberg*, 301 F.3d at 226. It also says that:

> The mere fact that a bank account can be used in the course of perpetrating a fraud does not mean that banks have a duty to persons other than their own customers. To the contrary, the duty is owed exclusively to the customer, not to the persons with whom the customer has dealings.

*Eisenberg*, 301 F.3d at 225-26 (*quoting McCallum v. Rizzo,* 4 Mass. L. Rep. 397 (1995)). Thus, while banks do not owe a duty to noncustomers, like the plaintiff in *Eisenberg*, they do owe it to customers. In that case, the plaintiff was defrauded by a customer of Wachovia Bank, and the plaintiff sued Wachovia claiming that they were negligent in allowing the fraudster to hold a fraudulent account at their institution. The court there reasoned that this action could not withstand a motion to dismiss, because, though the fraudster was a customer of Wachovia, the plaintiff was not. Since banks do not owe a duty to non-customers, Wachovia owed no duty to the plaintiff. *Eisenberg*, 301 F.3d at 221-227.

Here, unlike *Eisenberg*, the fraudster holds no account at BANA. Instead, it is Plaintiff who holds the account. Thus, Plaintiff is a customer of BANA's. Thus, Defendant BANA owes Plaintiff a duty of care.

iii. **Plaintiff's Action is Not Barred by the Economic Loss Rule, as Defendant BANA Breached More Than Merely a Contractual Provision with respect to Plaintiff.**

Defendant BANA argues that Plaintiff's action is barred by the Economic Loss Rule, but that is not the case, as Defendant BANA not only breached its contract with Plaintiff, but it also failed to comport with Industry Standards.

The economic loss rule is a recovery bar in negligence actions only where "duties are created *solely* by contract." *Eaton Corp. v. Trane Carolina Plains*, 350 F. Supp. 2d 699, 701 (D.S.C. 2004) (emphasis in original) (citing *Kennedy v. Columbia Lumber and Mfg. Co., Inc*., 384 S.E.2d 730, 737 (S.C. 1989)). Originally a creation of products liability law, the purpose of the economic loss rule is to "define the line between recovery in tort and recovery in contract." *Sapp v. Ford Motor Co*., 687 S.E.2d 47, 49 (S.C. 2009). The rule states that:

> Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "**economic losses**." Conversely, where a purchaser buys a product which is defective and physically harms him, his remedy is in either tort or contract. This is so, ... because his losses are more than merely "economic."

*Eaton*, 350 F. Supp. 2d 699, 701-02 (emphasis in original) (quoting Kennedy, at 345, 384 S.E.2d at 736)). Thus, while an alleged tortfeasor that *only* breaches the contract it has with a plaintiff is protected by the economic loss rule, if that alleged tortfeasor acts "in a way as to violate a legal duty [other than only contractual] . . . his liability is both in contract and in tort." *Kennedy* at 345.

One such way in which a defendant can be in violation of a legal duty that goes beyond the limitations of the economic loss rule is by the violation of "professional or industry standards." *Simons v. Wal-Mart Stores E., L.P*., Civil Action No. 8:11-cv-03180-JMC, 2013 U.S. Dist. LEXIS 14129 (D.S.C. Jan. 31, 2013). Accordingly, we analogize to *Simons v. Wal-Mart Stores E., L.P*. There, this Court held that the plaintiff's claim was not barred by the economic

14

loss rule because the bank in that case (which was BANA) failed to "comply with professional and industry standards when it mailed checks to the wrong address." *Simons*, Civil Action No. 8:11-cv-03180-JMC, 2013 U.S. Dist. LEXIS 14129 at *12. The court reasoned that

> South Carolina courts have held that the economic loss rule may not bar recovery in tort where a plaintiff is injured as a result of the defendant's failure to meet professional or industry standards. See *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 55, 463 S.E.2d 85, 88 (1995) (finding design processional may be liable in tort because of duties owed separate and distinct from their contractual duties); see also, e.g., *Mitchell v. Holler*, 311 S.C. 406, 429 S.E.2d 793 (1993) (legal malpractice); *Beachwalk Villas Condominium Ass'n v. Martin*, 305 S.C. 144, 406 S.E.2d 372 (1991) (architect liability).

*Simons*, Civil Action No. 8:11-cv-03180-JMC, 2013 U.S. Dist. LEXIS 14129 at *12-13. Further, the Court reasoned that even though the plaintiff had not yet identified a particular industry standard, does not mean the claim was barred, because such a standard could be pled at a later day. *Id.* at *13.

Likewise, here, Defendant BANA failed to comply with an industry standard by failing to prevent Plaintiff from withdrawing her life savings from the bank in one withdrawal. Seeing an elderly person withdrawing multiple tens of thousands of dollars from the bank should cause any bank employee to think twice before allowing it, especially in cases such as this where the amount of money requested is *more than the total amount of money held by that branch of the bank*. To allow a woman of Plaintiff's age to withdraw such a ridiculous amount in one foul swoop is negligent to the point that laws, such as S.C. Code § 43-35-87(H) have been enacted to prevent such infractions. It is so much an industry standard that banks are specifically authorized by statute to "declining[e] transactions to disburse monies" to vulnerable adults. S.C. Code § 43-35-87(H). Thus, Defendant BANA here, as in the *Simons* case, violated industry standards by failing to prevent Plaintiff from withdrawing a significant portion of her life savings from the

15

bank all at once. Thus, the violation by Defendant BANA is more than merely a breach of the contract between Plaintiff and Defendant BANA as a result of Plaintiff's ownership of a Bank of America savings account. Accordingly, her claims of Negligence are not barred by the "economic loss rule."

## V.     CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff, Christine Borden respectfully requests that this Court deny Defendant's Motion to Dismiss, thus allowing the Complaint to stand, and grant such other further relief as the Court deems just and proper.

This the 17th day of January, 2023                     Respectfully submitted,


/s/ David Maxfield
David Maxfield, Esq. FED ID 6293
David Maxfield, Attorney, LLC
PO Box 11865
Columbia, SC 29211
Telephone: (803) 509-6800
Facsimile: (855) 299-1656
dave@consumerlawsc.com

*Attorney for Plaintiff*