IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CHRISTINE BORDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BANK OF AMERICA, NA ("BANA") ) | CASE NO.: 2:22-cv-04076-BHH |
| AND WESTCLIFF TECHNOLOGIES, ) | |
| INC., D/B/A NATIONAL BITCOIN ) | |
| ATM, AND CASH CLOUD, INC., D/B/A ) | |
| COIN CLOUD, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT BANK OF AMERICA, N.A.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**I.     INTRODUCTION**

Plaintiff Christine Borden's ("Plaintiff") opposition ("Opposition") fails to effectively rebut the arguments addressed in Bank of America, N.A.'s Motion to Dismiss (the "Motion"). Plaintiff is seeking to hold BANA responsible for failing to prevent her from withdrawing her own money from her own bank accounts and engaging in unwise financial investments.  South Carolina law, however, imposes no such obligations or responsibilities upon banks.

Regarding the South Carolina Omnibus Act, Plaintiff's Opposition provides no basis for this Court to infer or otherwise recognize a private cause of action under S.C. Code § 43-35-87(H) when the legislature clearly did not intend to do so.  In fact, the statute is clear that it does not impose upon financial institutions the very duties that Plaintiff asks this Court to recognize – the duty to prevent suspicious transactions and report suspected financial exploitation.  Further, Plaintiff cannot establish that she is a vulnerable adult as defined by the South Carolina Omnibus Adult Protection Act and thus cannot bring an action, even if a private right of action did exist.

Additionally, Plaintiff's Opposition fails to establish why her negligence claims should survive. First, Plaintiff's negligence per se claim fails because the statute does not provide for a private right of action. Second, Plaintiff failed to properly address the duty of care owed by BANA, which is only that of a creditor to a debtor, which only furthers BANA's position that it owed no fiduciary-type duty to Plaintiff to prevent her from making unwise financial transactions with her own money. Lastly, Plaintiff failed to adequately plead that any industry standards were breached and cannot do so in her Opposition in an attempt to avoid the economic loss rule.

In sum, Plaintiff's Amended Complaint fails to allege any valid cause of action against BANA, and Plaintiff's Opposition does nothing to otherwise remedy this failure. Accordingly, the Court should grant BANA's motion to dismiss these claims with prejudice.

**II.     ARGUMENT**

    **A.     PLAINTIFF FAILS TO ESTABLISH THAT S.C. CODE § 43-35-87(H) CREATES A PRIVATE RIGHT OF ACTION.**

        **i.     A Plain Reading of S.C. Code § 43-35-87(H) and a Review of the Legislature's Intent Demonstrates No Private Right of Action Was Created.**

Plaintiff contends that S.C. Code § 43-35-87(H) creates an explicit private right of action, and even if it doesn't, this Court may infer a private right of action. (ECF 21, p. 5). Plaintiff does not and cannot, however, provide any materials or other evidence, including but not limited to legislative session journals, legislative comment, South Carolina Attorney General Opinions, or any relevant jurisprudence, regarding the legislative intent behind S.C. Code § 43-35-87(H). Instead, Plaintiff asks this Court to recognize a private right of action under this statute that would contradict the express language of the applicable statutes.

When determining whether a state statute creates a private right of action, "the central inquiry [is] whether the legislative body intended to create [one], either expressly or by

implication." *Forest Cap., LLC v. BlackRock, Inc.*, 658 F. App'x 675, 678 (4th Cir. 2016) (Citing *Fangman v. Genuine Title*, LLC, 447 Md. 681, 136 A.3d 772, 779 (2016); *see also Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "The [General Assembly]'s intent should be ascertained primarily from the plain language of the statute." *Ex parte Cannon*, 385 S.C. 643, 655, 685 S.E.2d 814, 821 (Ct.App.2009) (quoting *Georgia–Carolina Bail Bonds, Inc. v. City of Aiken*, 354 S.C. 18, 23, 579 S.E.2d 334, 336 (Ct.App.2003)). The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction. *State v. Sweat*, 379 S.C. 367, 375, 665 S.E.2d 645, 650 (Ct. App. 2008), aff'd as modified, 386 S.C. 339, 688 S.E.2d 569 (2010); *see also Durham v. United Cos. Fin. Corp.,* 331 S.C. 600, 604, 503 S.E.2d 465, 468 (1998). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature." *See Hodges*, 341 S.C. 85, 533 S.E.2d 581 (2000) (citing Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed. 1992)).

As an initial matter, the legislature has provided that it intended the amendment in S.C. Code § 43-35-87(H) "to authorize financial institutions to decline certain transactions in cases of the suspected financial exploitation of vulnerable adults." SC LEGIS. 84 (2021), 2021 South Carolina Laws Act 84 (S.425); *see also* 12 S.C. Jur. Governor § 49.1.

Regardless, even if the legislature had not explicitly defined its intent, S.C. Code § 43-35-87(H) states specifically that "financial institution[s] and employee[s] shall be immune from criminal, civil, or administrative liability for declining transaction to disburse monies pursuant to this section . . . ." At no point thereafter does the statute explicitly state a party may bring a cause of action under S.C. Code § 43-35-87(H), nor does the statute provide damages or remedies available to the party for breach thereof. Plaintiff's Opposition relies on the following language:

3

> Nothing in this section is intended to nor does it limit or shield in any manner a financial institution from civil liability against **any** claim, including reasonable attorneys' fees, costs, and litigation expenses, for participating in or materially aiding the financial exploitation of a vulnerable adult. **Any** such claims shall be asserted by the vulnerable adult or on his behalf by an appropriate guardian or representative who is not involved in or otherwise suspected of participating in the financial exploitation of the vulnerable adult, by filing a civil action in circuit court.

S.C. Code § 43-35-87(H) (emphasis added). As can be readily observed, at no point in this section does the statute itself state a party can pursue an action under S.C. Code § 43-35-87(H) specifically, or even under the South Carolina Omnibus Adult Protection Act as a whole. As noted previously, the section merely notes that the statute as a whole was not intended to provide unlimited immunity to financial institutions. A plain reading of this relevant section, which Plaintiff's Opposition focuses on, notes that 'any' claim may be asserted, yet at no point within S.C. Code § 43-35-87 does it state that a private party may bring an action under this statute.

When "the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it which are not in the legislature's language." *City of Camden v. Brassell*, 326 S.C. 556, 561, 486 S.E.2d 492, 495 (Ct. App. 1997). As is the case here, both the legislature's intent and the statute itself is clear and explicit regarding the purpose of S.C. Code § 43-35-87(H). The amendment clarifies that the Act does not provide unbridled immunity to financial institutions that participate in or materially aid in the financial exploitation of a vulnerable adult.

Looking more broadly at the entire statute, S.C. Code § 43-35-80(A) and (C) expressly state that there is no private right of action under the statute "against one who fails through pattern or practice to exercise reasonable care" against a person or facility "based on an action or failure to act" that would constitute "abuse, neglect, or exploitation under this chapter," and that only the Attorney General may bring such a claim. In addition, S.C. Code § 43-35-87 itself could not be more clear that it does not *require* banks to take any action to protect vulnerable adults, but is

4

designed to shield them from liability if they do so. *See* S.C. Code § 43-35-87(B) ("If a financial institution reasonably believes that the financial exploitation of a vulnerable adult has occurred or may occur, then the financial institution *may, but is not required to*, decline or place on hold any transaction …"); S.C. Code § 43-35-87(D) ("A financial institution *is not required to decline or place on hold a transaction* pursuant to this section. *Such a decision is in the financial institution's discretion*, based on the information available to the financial institution"); S.C. Code § 43-35-87(E)(2) ("Notwithstanding the provisions of this subsection, *a financial institution has no duty to notify any party that is suspected of financial exploitation* pursuant to this section") (emphasis added).

S.C. Code § 43-35-87(H) only says that it is not intended to prevent civil actions against financial institutions "for participating in or materially aiding the financial exploitation of a vulnerable adult." Although Plaintiff alleges that BANA participated in or materially aided in her financial exploitation, these allegations are conclusory and completely unsupported, as she did not elaborate on what BANA did to participate or materially aid in her exploitation, who acted on behalf of BANA, or why. Plaintiff has not alleged that BANA conspired with the fraudsters who tricked her, or knowingly aided the fraudsters in their scheme to defraud her. Instead, she merely alleges that BANA failed to identify her withdrawals as suspicious and failed to prevent her from withdrawing money from her own account. Plaintiff is in effect asking this Court to allow a private right of action to hold financial institutions responsible for failing to stop her from making transactions with her own money – a result which the legislature expressly rejected in the language of the applicable law. Therefore, Plaintiff's claim must be dismissed.

### ii. Plaintiff is not Considered a Vulnerable Adult Pursuant to S.C. Code § 43-35-10.

Plaintiff's Opposition fails to show that Plaintiff is a vulnerable adult pursuant to S.C. Code § 43-35-10. The South Carolina Supreme Court specifically acknowledged that advanced age and poverty are not sufficient to prove a party is a vulnerable adult under the South Carolina Omnibus Adult Protection Act. *See Doe v. S.C. Dep't of Soc. Servs.*, 407 S.C. 623, 757 S.E.2d 712 (2014)

The South Carolina Supreme Court in *Doe* analyzed whether an 86-year-old woman with a heart condition rose to the level of a vulnerable adult. *Id*. The court declared that advance age alone was inadequate unless "advanced age impaired her ability to adequately provide for her own care and protection." *Id*. at 639. The court further went on to specifically note that "poverty alone is not sufficient to satisfy the definition of a vulnerable adult under the Act." *Id*. at 638.

Plaintiff only asserts she is considered a vulnerable adult due to her age (73-years of age), that she lives below the poverty line, and is not technologically experienced. As the South Carolina Supreme Court previously addressed, Plaintiff's age and economic status alone are insufficient to establish that she is a vulnerable adult within the meaning of the statute. As to her technological experience, while this issue has not specifically been addressed by the South Carolina courts, one's inability to use technology, such as emails or telephone calls, does not rise to the level of such impairment that it causes a "diminished ability to adequately provide for self-care or protection." *Id*. at 635.

Plaintiff has not alleged that she is not able to adequately care for herself or that she cannot manage her own financial affairs, and Plaintiff's Opposition makes no such claims, either. In fact, Plaintiff is apparently able to live on her own, drive a car, and conduct financial transactions. Plaintiff has failed to establish that she a vulnerable adult under the South Carolina Omnibus Adult Protection Act, and this statute is therefore inapplicable.

B. **PLAINTIFF'S OPPOSITION STILL FAILS TO ESTABLISH A COLORABLE CAUSE OF ACTION FOR NEGLIGENCE AGAINST BANA.**

i. *Plaintiff's Opposition Fails to Cure the Deficiencies in Plaintiff's Amended Complaint In Alleging Negligence Per Se.*

As discussed above, Plaintiff continues to ignore the legislative intent of S.C. Code § 43-35-87(H). Plaintiff's conclusory allegations and unsupported insinuations do not bear any weight as a plain reading of the statute, combined with the explicit legislative intent, evidence that the South Carolina legislature did not intend to establish a private right of action under S.C. Code § 43-35-87(H).

A statute must create a private cause of action in order for a party to bring an action of negligence per se under the statute. *Doe v. Marion*, 373 S.C. 390, 645 S.E.2d 245 (2007). Here, the language itself does not state that a private cause of action exists. In fact, the legislature specifically noted that the amendment was to provide immunity for declining transactions, and that the statute does not *require* financial institutions to take any action to protect against financial exploitation of vulnerable adults. Therefore, Plaintiff cannot base her negligence per se claim on S.C. Code § 43-35-87(H).

Even if a private cause of action did exist, which BANA denies, a party may only bring forth a claim of negligence per se if "(1) the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) the plaintiff is a member of the class of persons the statute is intended to protect." *J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 553 (D.S.C. 2020), aff'd, Case No. 20-1767, 2021 WL 4859603 (4th Cir. Oct. 19, 2021) (citing *Whitlaw v. Kroger Co.*, 306 S.C. 51, 410 S.E.2d 251 (1991)). The essential purpose of the South Carolina Omnibus Adult Protection Act is to protect vulnerable adults. *See Williams v. Watkins*, 665 S.E.2d 243, 245 (Ct. App. 2008); *see also* S.C. Code § 43-35. As demonstrated above, Plaintiff is not a

vulnerable adult pursuant to S.C. Code § 43-35-10. Plaintiff's Amended Complaint and Opposition fail to identify why Plaintiff is not capable of caring for herself or protecting her own interests. As such, Plaintiff's cause of action for negligence per se must be dismissed as Plaintiff is not a member of the class of persons intended to be protected under the South Carolina Omnibus Adult Protection Act.

          **ii.      Plaintiff's Negligence Claims Still Fail as a Matter of Law Because BANA Does Not Owe Plaintiff a Duty of Care.**

Plaintiff admits that no BANA employee intentionally harmed her, but asserts that BANA owed her a legal duty of care. (See ECF 21, p. 12). However, as a matter of law, BANA does not owe any duty of care to Plaintiff.

Plaintiff's Opposition completely ignores the well-settled case law, which is documented in BANA's Motion as well as herein, that financial institutions owe no duty of care to customers. *Fort v. Suntrust Bank*, No. 7:13-CV-1883-BHH, 2016 WL 4492898, at *8 (D.S.C. Aug. 26, 2016), *aff'd sub nom. In re Int'l Payment Grp., Inc.*, 733 F. App'x 98 (4th Cir. 2018) ("South Carolina courts and the Fourth Circuit Court of Appeals have both affirmed the principle that there is no overarching duty of care between a bank and its customers"). *See also Midland Mortg. Corp. v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 780, 792 (D.S.C. 2013), *aff'd sub nom.*, 545 F. App'x 194 (4th Cir. 2013) (citing *Pulliam v. Clark*, No. 4:11-cv-03047-RBH, 2012 WL 1835717, at *4 (D.S.C. May 21, 2012) ("In the banking context, South Carolina courts recognize that banks owe "no special duty of care" to ordinary customers, and an individual is not ordinarily entitled to rely on a bank for financial guidance, information regarding potential liabilities flowing from contractual agreements, or for information on the financial condition of others.")); *Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432, 443–44 (S.C.Ct.App.2003) (citing *Citizens & S. Nat'l Bank of South Carolina v. Lanford*, 313 S.C. 540, 443 S.E.2d 549, 551 (S.C.1994); *In re Int'l*

*Payment Grp., Inc.*, 733 F. App'x 98, 102 (4th Cir. 2018) (citing !*Owens v. Andrews Bank & Trust Co.*, 265 S.C. 490, 220 S.E.2d 116, 119 (1975) ("the relationship between a general depositor and his bank is that of creditor and debtor"); *PPG Indus., Inc. v. Orangeburg Paint & Decorating Ctr.*, 297 S.C. 176, 375 S.E.2d 331 (S.C. Ct. App. 1989)).

Neither Plaintiff's Amended Complaint nor Plaintiff's Opposition allege or suggest any special circumstance which would create a duty of care. Instead, Plaintiff alleges only that BANA had a duty to notice the suspicious nature of her transactions, prevent those transactions, and report those transactions to law enforcement. South Carolina's legislature has expressly declined to impose such a duty on financial institutions in S.C. Code § 43-35-87(H). BANA is also not aware of any case law that would impose such a duty on financial institutions, and Plaintiff has cited none in opposition to BANA's motion. In fact, the duty that Plaintiff seeks to impose on financial institutions here is in essence a fiduciary duty to look out for Plaintiff's financial well-being, which courts have consistently held that banks do not have toward their customers. *Regions Bank v. Schmauch*, 354 S.C. 648, 671, 582 S.E.2d 432, 444 (Ct. App. 2003) (citing *Burwell v. South Carolina Nat'l Bank,* 288 S.C. 34, 40, 340 S.E.2d 786, 790 (1986)) ("South Carolina holds the normal relationship between a bank and its customer is one of creditor-debtor and not fiduciary in nature"). Therefore, Plaintiff fails to establish that BANA owed her a duty a care, and Plaintiff's claims for negligence must be dismissed.

### iii. Plaintiff's Negligence Claims Remain Barred by the Economic Loss Rule.

As is noted in BANA's Motion and Plaintiff's Opposition, the economic loss rule bars tort actions where duties are created solely by contract. *See Eaton Corp. v. Trane Carolina Plains*, 350 F. Supp. 2d 699, 701 (D.S.C. 2004) (citing *Kennedy v. Columbia Lumber and Mfg. Co., Inc.*, 299

S.C. 335, 384 S.E.2d 730, 737 (1989)). "The relationship between a bank and its depositor is one of contract." *Read v. S.C. Nat. Bank*, 286 S.C. 534, 538, 335 S.E.2d 359, 361 (1985).

South Carolina courts have held that the economic loss rule may not bar recovery in tort where a plaintiff was injured due to a violation of professional or industry standards. *See Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.,* 320 S.C. 49, 55, 463 S.E.2d 85, 88 (1995); *see also Mitchell v. Holler,* 311 S.C. 406, 429 S.E.2d 793 (1993). In order to survive the economic loss defense due to a violation of professional or industry standards a party must specifically allege that the defendant failed to comply with professional or industry standards. *See Simons v. Wal-Mart Stores E., L.P.*, Civil Action No. 8:11-cv-03180-JMC, 2013 U.S. Dist. LEXIS 14129 (D.S.C. Jan. 31, 2013). While a party may identify the particular standard at a later date in the action, a plaintiff must identify in their allegations that a violation occurred. *Id*.

Plaintiff analogizes this matter to *Simons* alleging that BANA here failed to comply with professional and industry standards. However, this matter is distinguishable from *Simons* as Plaintiff's Amended Complaint does not allege that BANA violated professional or industry standards. While the court in *Simons* determined the economic loss rule did not bar the negligence claims, the court specifically noted that the plaintiff alleged the defendant failed to comply with professional and industry standards in its initial pleading. *Id*. at *12. Here, Plaintiff is attempting to cure the deficiencies of her Amended Complaint by alleging for the first time in her Opposition that BANA violated professional and industry standards.

Plaintiff had not one but two separate opportunities to adequately plead this violation, but failed to do so. Therefore, Plaintiff's negligence claims remain barred by the economic loss rule. Furthermore, allowing Plaintiff to amend to assert such claims would be futile, as the law does not impose upon banks the duty to prevent their customers from making unwise financial decisions

with their own money. Therefore, Plaintiff's negligence claims should be dismissed with prejudice.

## III. CONCLUSION

For the reasons set forth above and in BANA's Motion to Dismiss, this Court should dismiss Plaintiff's claims against BANA with prejudice and award BANA any other and further relief that the Court deems appropriate.

This the 24th day of January, 2023

Respectfully submitted,

/s/ Jasmine K. Gardner

Jasmine K. Gardner (S.C. Fed. Bar # 12531)
MCGUIREWOODS, LLP
201 N. Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone: (704) 343-2262
Facsimile: (704) 373-8825
E-mail: jgardner@mcguirewoods.com

*Attorney for Defendant Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2023, I electronically filed the foregoing *DEFENDANT BANK OF AMERICA, N.A.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT* with the Court's CM/ECF system which served an electronic copy on all counsel of record.

Dave Maxfield, Esq.
David Maxfield, Attorney, LLC
PO Box 11865
Columbia, SC 29211
dave@consumerlawsc.com

*Attorney for Plaintiff*

Tara E. Nauful
999 Lake Hunter Circle, Suite D
Mount Pleasant, SC 29464
(843) 793-4744
tara@bestlawsc.com

*Attorney for Westcliff Technologies Inc.*

　　　　　　　　　　　　　　　　　　　　*/s/ Jasmine K. Gardner*
　　　　　　　　　　　　　　　　　　　　Jasmine K. Gardner (S.C. Fed. Bar #12531)