IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **CHRISTINE BORDEN,** <br><br> **Plaintiff,** <br><br> v. <br><br> **BANK OF AMERICA, NA ("BANA") AND WESTCLIFF TECHNOLOGIES, INC., D/B/A NATIONAL BITCOIN ATM, AND CASH CLOUD, INC., D/B/A/ COIN CLOUD,** <br><br> **Defendants.** | CASE NO.: 2:22-cv-04076-BHH |

**DEFENDANT WESTCLIFF TECHNOLOGY, INC.'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
(FRCP 12(b)(6))**

Defendant Westcliff Technologies, Inc. dba National Bitcoin ATM ("Westcliff" or "Defendant") hereby replies to the Plaintiff's Response to this defendant's Rule 12 motion as follows:

### I. Background

Plaintiff has asserted claims against Westcliff for violations of S.C. Code § 43-35-87(H) (elder abuse), the South Carolina Unfair Trade Practices Act ("SCUTPA"), negligent training/supervision, strict liability (abnormally dangerous activities), conversion and unjust enrichment.

Plaintiff's relationship with Westcliff was governed by a Terms of Service ("ToS") agreement[1] which she accepted, and which governed all relations between Plaintiff and Westcliff.

---

[1] The ToS were attached to Westcliff's moving papers as Exhibit 1, and consideration of the same is requested per *Anand* and *Sanders*, below.

1

Plaintiff has breached the arbitration agreement therein by bringing this action.[2] By challenging her Complaint on Rule 12 grounds herein, Westcliff does not waive any rights to arbitration, and asserts the arbitration clause as a preemptive bar to Westcliff's inclusion in these proceedings.

To the extent Westcliff is forced to participate in these proceedings despite its arbitration rights, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted on the further grounds detailed below.

 A) *There is No Material Variance in the Allegations as to Westcliff Between the Original Complaint and Amended Complaint.*

Plaintiff notes (at footnote 1, page 5 of their Opposition to Westcliff's Rule 12 motion) that she filed an amended complaint only two days before the filing of Westcliff's Rule 12 motion.

However, Plaintiff fails to specify how the amendment varies from the original pleading.

As best ascertainable by Westcliff, the only variance in the two pleadings appears to be the addition of Paragraph 46 in the Amended Complaint of December 19, 2022 (*See Amended Complaint* 46. Defendant BANA did not warn Plaintiff – or even ask questions – about the transactions.")

This amendment does not pertain to Westcliff in any way, and the Amended Complaint appears otherwise identical to that addressed in Westcliff's Rule 12 motion.

If Plaintiff believed in good faith that the amendment was material to consideration of Westcliff's Rule 12 motion, she could and should have specified in her response what was amended with respect to Westcliff and explained how the amendment related to Westcliff's Rule 12 motion.

 B) *S.C. Code § 43-35-87(H) Does Not Imply a Private Right of Action.*

Plaintiff paraphrases S.C. Code § 43-35-87(H) as follows:

> As demonstrated previously, the language of the relevant statute explicitly denotes an intention of creating a civil liability, where it says: "Nothing in this section is intended to nor does it limit or shield in any manner a financial institution from civil liability against any claim . . . . Any such claim shall be asserted by the vulnerable adult" S.C. Code § 43-35-87(H).

---

[2] Westcliff will subsequently petition this Court to compel arbitration and/or move for summary judgment if necessary to enforce the terms of this agreement.

Plaintiff's Response to Westcliff's Rule 12 Motion, Page 8.

But there is a plain-language difference between "not limiting" pre-existing remedies and creating a new remedy.

Plaintiff is tendentiously parsing the subsection in question. In full, it reads:

> Nothing in this section is intended to nor does it limit or shield in any manner a financial institution from civil liability against any claim, including reasonable attorneys' fees, costs, and litigation expenses, for participating in or materially aiding the financial exploitation of a vulnerable adult. Any such claims shall be asserted by the vulnerable adult, or on his behalf by an appropriate guardian or representative who is not involved in or otherwise suspected of participating in the financial exploitation of the vulnerable adult, by filing a civil action in circuit court.

S.C. Code § 43-35-87(H).

Rather than creating a new claim, the statement that "any such claims shall be asserted by...filing a civil action in circuit court" plainly means that the pre-existing tort or contract remedies which alleged victims already possess shall be asserted by the aggrieved person(s) or their representatives, not the government. Subsection (H) expressly preserves pre-existing remedies and reserves their prosecution to the aggrieved parties. It is merely an expression of non-peremptory intent - nothing more.

If the Legislature had intended to create a new cause of action, they could and would have clearly stated this. Furthermore,

> A well-established rule of statutory construction is "expressio unius est exclusio alterius," which means that the enumeration of particular things excludes the idea of something else not mentioned. *Little v. Town of Conway*, 171 S.C. 27, 171 S.E. 447 (1933). Under the rule, exceptions made in a statute give rise to a strong inference that no other exceptions were intended. *Allstate Insurance Co. v. Wyoming Insurance Department*, 672 P.2d 810 (Wyo. 1983).

*Pennsylvania National Mutual Casualty Ins. Co. v. Parker* 282 S.C. 546 (1984) at 555.

Plaintiff is asking this Court to recognize on first impression a South Carolina state cause of action by inferring the intent of the South Carolina General Assembly, against the plan language of the statute, and without reference to supporting state authority.

Plaintiff's citation of *Williams v. Watkins*, 665 S.E.2d 243, 245 n. 3 (Ct. App. 2008) provides no such authority. All that the cited <u>footnote dicta</u> recognizes is that the Omnibus Adult

Protection Act empowers <u>state authorities</u> to "provide civil and criminal penalties to perpetrators of the abuse, neglect, or exploitation of vulnerable adults" (quote from *Williams*, supra, Footnote 3).

*Williams* was a case concerning the potential liability of "mandated reporter" professionals for defamation arising from reports of the sexual abuse of an eight-year-old disabled child by the husband of her foster parent/licensed caregiver Williams.

To provide the context dubiously stripped by Plaintiff's quotation, the *Williams* court held that the mandated reporters could not sue for defamation because they faced criminal penalties for failure to report the alleged abuse.

This is no basis on which a federal court should create a state law civil cause of action out of whole cloth in a case entirely dissimilar.

As for Plaintiff's own "Footnote 3" regarding 43-35-80(A) (Plaintiff's Response, Page 9), subsection (A), the cited section reads as follows:

> SECTION 43-35-80. Action by Attorney General against person or facility for failure to exercise reasonable care; fine.
>
> (A) Notwithstanding any regulatory or administrative penalty that may be assessed and <u>in addition to a private civil cause of action that may be brought</u> against a person or facility based on an action or failure to act that <u>otherwise constitutes abuse, neglect, or exploitation under this chapter</u>, the Attorney General, upon referral from the Long Term Care Ombudsman Program or the Vulnerable Adults Investigations Unit, may bring an action against a person

(emphasis added).

This states no more than S.C. Code § 43-35-87(H) above. Otherwise recognized and pre-existing causes of action are not pre-empted by either Section 43-35-80 or Section 43-35-87. But neither section implies much less expresses a legislative intent to create a new remedy.

C) *Plaintiff has not Established her "Vulnerable Adult" Status.*

As noted by Defendant Bank of America, N.A. in its own reply brief, replying to similar arguments made by Plaintiff in opposition to their own Rule 12 motion, the question of whether someone qualifies as a protected "vulnerable adult" under the statute centers on impairment, not age or income. *See Doe v. S.C. Dep't of Soc. Servs.*, 407 S.C. 623, 639, 757 S.E.2d 712 (2014)

(noting that advanced age (86) alone is inadequate unless "advanced age impaired her ability to adequately provide for her own care and protection."). Likewise, "poverty alone is not sufficient to satisfy the definition of a vulnerable adult under the Act." *Id*. at 638.

Nothing in Plaintiff's amended complaint or response establishes anything beyond her age and her income level. Plaintiff's "diminished ability to adequately provide for self-care or protection" is conclusorily alleged, not factually supported. *Id.* at 635; *see also State v. Stubbs*, 5 Neb.App. 38, 555 N.W.2d 55, 62 (1996) (vacating conviction for exploitation of a vulnerable adult where evidence that victim was physically and mentally aging did not establish that the victim had "substantial functional impairment which left him incapable of caring for himself or living independently"), aff'd, 252 Neb. 420, 562 N.W.2d 547 (1997)) (*cited with approval in Doe v. S.C. Dep't Soc. Servs.,* – 407 S.C. 6 at 636).

Circular arguments based on conclusory allegations are not grounds for denying a Rule 12 dismissal:

> Further, her advanced age led her to being a prime target for scammers, resulting in the loss of nearly $100,000 of her own personal savings. This alone evidences why Plaintiff is unable to "adequately provide for the [her] own care or protection."

Plaintiff's Response to Westcliff's Rule 12 Motion - Page 10.

On the basis of this argument "alone," Westcliff asserts that the South Carolina Supreme Court would deny Plaintiff's status as pleaded. Plaintiff has a duty to allege additional facts and present additional evidence to establish her vulnerable status.

D)  Unfair Trade Practices.

Plaintiff's arguments in her Response do not credibly address the fact that Westcliff in fact did flag Plaintiff's account for special scrutiny, and that in response to questions posed by Westcliff, Plaintiff herself assured Westcliff that no untoward activity was taking place.

No defendant could ever protect itself from liability if the standard for "risk of repetition" were expanded to include situations when the defendant takes reasonable steps to investigate and is assured by the plaintiff that there is no cause for concern, or if the mere fact that a plaintiff was victimized was sufficient to meet a plaintiff's burden of proof.     These  arguments  are  simply

another means of pleading for strict liability (see below).

In addition, South Carolina courts have consistently rejected speculative claims of adverse public impact and have required evidentiary proof of such effects. (*Florence Paper Co. v. Orphan*, 298 S.C. 210, 379 S.E.2d 289, 291 (1989); *Columbia E. Assocs. v. Bi-Lo, Inc.*, 299 S.C. 515, 386 S.E.2d 259, 263 (Ct.App.1989)); *see also Machinery Solutions, Inc. v. Doosan Corp.*, No. 3:15-cv-03447, 2016 WL 2756429, at 3 (D.S.C. May 12, 2016) (noting that "[a]bsent specific facts, a plaintiff is merely offering a speculative claim about adverse public impact."); *Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:15-cv-01300-JMC, 2015 WL 7568613, at 9 (D.S.C. Nov. 24, 2015) ("The fact that an alleged misconduct occurred is not sufficient to establish that the misconduct amounts to a procedure or business practice.").

> E) *Plaintiff's Responsive Arguments regarding Negligence Per Se Fail When their Argument regarding a Private Cause of Action under the Omnibus Adult Protection Act Fails.*

As noted by defendant Bank of America, N.A. in its own reply to Plaintiff's Rule 12 response, a statute must create a private cause of action in order for a party to bring an action of negligence per se under the statute. *Doe v. Marion*, 373 S.C. 390, 645 S.E.2d 245 (2007).

As demonstrated by Westcliff above, no such private right of action exists, under the plain language or the statute or by implication.

> F) *Regarding Negligence, Plaintiff Does Not Address Westcliff's Reasonable Efforts at Investigation in Arguing for What Amounts to Strict Liability.*

Even if a duty of care existed between Westcliff and Plaintiff, defendants acted with reasonable care. The standard urged by Plaintiff in her pleadings and Rule 12 response is one of strict liability, not one grounded on a defendant's lack of reasonable caution or a Plaintiff's duty to exercise reasonable diligence. Applying Plaintiff's pleaded standard, Westcliff could only avoid exposure by denying their services to all persons in South Carolina. This would amount to an entirely unreasonable and unjustified restraint of trade.

Contra Plaintiff's citation of *Kennedy v. Columbia Lumber and Mfg. Co., Inc.*, 384 S.E.2d

6

730, 737 (S.C. 1989), Defendant has not violated a recognized or cognizable extra-contractual duty. The duty urged by Plaintiff is unjustly expansive and should not be supported in law.

As noted above, Plaintiff has not established that the single "warning label" provided is in fact an industry standard.

Furthermore, there is no plausible reason to believe that a warning label would have mitigated or prevented Plaintiff's victimization as alleged in the pleadings. If Plaintiff was allegedly insufficiently alerted by Westcliff's direct inquiry regarding the potentially suspicious transaction and felt confident enough to reassure Westcliff that nothing was amiss, the claim that a warning label could have prevented Plaintiff's injury is inadmissibly implausible under *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).)

G) *Strict Liability is an Unjust and Inapplicable Standard to Apply to the Relationship Between Plaintiff and Westcliff.*

As with Plaintiff's demand that this Court fashion a private cause of action under SCOAPA from whole cloth, her demand for strict liability in these circumstances is a radical and unjustified overreach.

Plaintiff's reasoning as to why strict liability should be applied herein is biased and unpersuasive. Again, Westcliff took reasonable precautions and Plaintiff has not plausibly addressed or explained why Westcliff was not justified in relying on her own representations as to the propriety of the subject transactions.

Plaintiff cites neither substantial evidence or authority for this novel expansion of strict liability under South Carolina law. If such a change were justified at all, it should come from the courts of South Carolina, not a U.S. District court.

H) *As to Conversion, Plaintiff Asks that the Court Ignore Admissible Evidence of Plaintiff's Obvious Consent, Which Conclusively Establishes that this Claim Cannot Survive Past the Pleading Stage.*

Plaintiff's responsive arguments regarding conversion nakedly admit the flaw that underlies each claim against Westcliff - *"yes, Plaintiff consented - she assured Westcliff that nothing*

*untoward was occurring after Westcliff flagged the transactions. But the Court should ignore that because Plaintiff is entitled to a presumption of truth despite incontrovertible admissible evidence to the contrary."*

This Court <u>can</u> ignore the evidence outside the pleadings - consideration of this evidence per *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) and *Sanders v. Brown*, 504 F 3d 903, 910 (9th Cir 2007) is discretionary. But that does not mean that it <u>should</u>.

If Plaintiff's claims cannot survive beyond the mere pleading stage, there is no reason why the Court should not dismiss them now rather than subjecting Westcliff to further fees and costs in further litigation.

> I) *Plaintiff's Refusal to Explain and Justify Her Assurances to Westcliff is Fatal to Her Unjust Enrichment Claim (as Well as All Others).*

Plaintiff's Response to Westcliff's Rule 12 motion states, in pertinent part:

> Finally, Defendant Westcliff argues that Plaintiff's claim for Unjust Enrichment is untenable because "Plaintiff herself assured Westcliff that nothing untoward was happening with her account/wallet." (ECF 9, p. 9). This is immaterial, because though Plaintiff may have thought that at the time, she has obviously since learned new information that led her to believe otherwise. When she made that assertion, she was still in the process of being scammed, and was thus unaware of this fact. Thus, this statement is immaterial and not a valid reason to dismiss the Plaintiff's Unjust Enrichment Claim.

Response, Page 22.

This raises questions such as *what was that new information?* and c*ould Plaintiff have discovered this information through exercise of reasonable prudence?* Plaintiff again fails and refuses to provide specific information that would allow this Court to properly evaluate these conclusory allegations per Rule 12.

Plaintiff is pleading a strict liability standard in a roundabout fashion. No matter what steps Westcliff took to investigate, and regardless of Plaintiff's specific warranty as to the propriety of the transactions, Westcliff is still allegedly subject to liability. This logic would make Westcliff a de facto insurer of every victim of fraud who utilizes its products and services regardless of the circumstances. Setting aside the fact that such an outcome would unreasonably restrain trade and

subject Westcliff to unequal and unjustified liabilities, this is, quite simply, not what is provided for under South Carolina law.

## II.  Conclusion

Having fully responded to Plaintiff's reply, Westcliff requests that the Court overrule Plaintiff's objection, and grant Westcliff the relief requested in its Motion.

>Respectfully submitted.
>BEST LAW, P.A.
>
>  /s/ Morgan R. Dunn
>Tara E. Nauful, DCID 5864
>tara@bestlawsc.com
>Morgan R. Dunn, DCID 13836
>morgan@bestlawsc.com
>999 Lake Hunter Circle, Suite D
>Mount Pleasant, SC 29464
>(843) 793-4744
>
>and
>
>Vincent Renda
>vr@pinlegal.com
>Pinnacle Legal P.C.
>9565 Waples Street, Suite #200
>San Diego, CA 92121
>O: 858-868-5000 / F: 866-303-8383
>
>Attorneys for Westcliff Technologies, Inc

January 31, 2023

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| **CHRISTINE BORDEN,** | CASE NO.: 2:22-cv-04076-BHH |
| **Plaintiff,** | |
| v. | |
| | **CERTIFICATE OF SERVICE** |
| **BANK OF AMERICA, NA ("BANA") AND WESTCLIFF TECHNOLOGIES, INC., D/B/A NATIONAL BITCOIN ATM, AND CASH CLOUD, INC., D/B/A/ COIN CLOUD,** | |
| **Defendants.** | |

I hereby certify that on January 31, 2023, I caused a true and correct copy of the foregoing documents to be served on the parties below via the Court's ECF filing system, as follows:

Dave Maxfield, Esq.
David Maxfield, Attorney, LLC
PO Box 11865
Columbia, SC 29211
dave@consumerlawsc.com

Jasmine K. Gardner Esq.
McGuireWoods, LLP
201 N. Tryon Street, Suite 3000
Charlotte, NC 28202
jgardner@mcguirewoods.com

BEST LAW, P.A.

*/s/ Morgan R. Dunn*
Morgan R. Dunn, DCID 13836
999 Lake Hunter Circle, Suite D
Mount Pleasant, SC 29464
843.793.4744
morgan@bestlawsc.com

Attorneys for Westcliff Technologies, Inc.